UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MICHAEL J. ROSA,

                Plaintiff,

v.                                               3:14-CV-1145
                                              (GTS/WBC)

COMMISSIONER OF SOCIAL SECURITY,

                Defendant.
_____

| APPEARANCES: | OF COUNSEL: |
|---|---|
| LACHMAN & GORTON<br> Counsel for Plaintiff<br>P.O. Box 89<br>Endicott, NY 13761-0089 | PETER A. GORTON, ESQ. |
| U.S. SOCIAL SECURITY ADMIN.<br>OFFICE OF REG'L GEN. COUNSEL<br>– REGION II<br> Counsel for Defendant<br>26 Federal Plaza – Room 3904<br>New York, NY 10278 | REBECCA H. ESTELLE, ESQ.<br>AMANDA J. LOCKSHIN, ESQ. |

William B. Mitchell Carter, U.S. Magistrate Judge,

## **REPORT and RECOMMENDATION**

      This matter was referred for report and recommendation by the Honorable Judge Suddaby, Chief United States District Judge, pursuant to 28 U.S.C. § 636(b) and Local Rule 72.3(d).  (Dkt. No. 21.)  This case has proceeded in accordance with General Order 18.

      Currently before the Court, in this Social Security action filed by Michael J. Rosa ("Plaintiff") against the Commissioner of Social Security ("Defendant" or "the Commissioner") pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), are the parties' cross-

motions for judgment on the pleadings. (Dkt. Nos. 16, 20.) Plaintiff also filed a reply brief. (Dkt. No. 24.) For the reasons set forth below, it is recommended that Plaintiff's motion be denied and Defendant's motion be granted.

## I. RELEVANT BACKGROUND

### A. Factual Background

Plaintiff was born on October 1, 1974. (T. 192.) Generally, Plaintiff's alleged disability consists of neck, back, and knee impairments. (T. 197.) His alleged disability onset date is June 10, 2000. (T. 40.) His date last insured is December 31, 2010. (T. 1077.) His has past relevant work as a dishwasher. (T. 1088.)

### B. Procedural History

On January 13, 2006, Plaintiff applied for a period of Disability Insurance Benefits ("SSD") under Title II, and Supplemental Security Income ("SSI") under Title XVI, of the Social Security Act. (T. 42.) Plaintiff's applications were initially denied, after which he timely requested a hearing before an Administrative Law Judge ("the ALJ"). On December 6, 2007, Plaintiff appeared before ALJ J. Michael Brounoff. (T. 1028-1070.) On April 25, 2008, ALJ Brounoff issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 44-56.) On March 11, 2010, the Appeals Council ("AC") granted Plaintiff's request for review. (T. 109-111.) On May 24, 2011, Plaintiff appeared before ALJ Robert E. Gale. (T. 977-1027.) On August 9, 2011, ALJ Gale issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 19-30.) On January 9, 2012, the AC denied Plaintiff's request for review. (T. 11-14.) Plaintiff timely commenced a civil action with this Court. (T. 1091-1111.)[1] The District Court reversed and remanded the case for further proceedings. On July 17, 2013, the

---

[1] *Rosa v. Colvin*, No. 3:12-CV-0170, 2013 WL 1292145 (N.D.N.Y. Mar. 27, 2013).

AC vacated ALJ Gale's May 24, 2011 decision. (T. 1114-1115.) On December 19, 2013, and for a supplemental hearing on June 4, 2014, Plaintiff appeared before ALJ Jennifer Gale Smith. (T. 1615-1657, 1658-1684.) On July 16, 2014, ALJ Gale-Smith issued a written decision finding Plaintiff not disabled under the Social Security Act. (T. 1071-1090.) Plaintiff then commenced this action on December 17, 2013. (Dkt. No. 1.) Neither party specifically addresses how the decision of the ALJ became the final decision of the Commissioner. The ALJ's decision stated: "[this] decision will become final on the 61st day following the date of this notice. After [this] decision becomes final, [Plaintiff] will have 60 days to file a new civil action during the 60-day period starting with the day [this] decision becomes final." (T. 1072.) It appears that 20 C.F.R. § 404.966 (Testing Elimination of the Request of Appeals Council Review) was implemented in this case; however, the ALJ's decision does not cite to any Regulation or other authority.

### C. The ALJ's Decision

Generally, in her decision, the ALJ made the following five findings of fact and conclusions of law. (T. 1077-1090.) First, the ALJ found that Plaintiff met the insured status requirements through December 31, 2010 and Plaintiff had not engaged in substantial gainful activity from April 12, 2005 through January 30, 2012. (T. 1077.)[2] Second, the ALJ found that Plaintiff had the severe impairments of status-post myocardial infarction, atherosclerotic heart disease, mild degenerative changes of the cervical and lumbosacral spine, asthma/chronic obstructive pulmonary disease ("COPD"), a reading and spelling disorder, a depressive disorder, and an anxiety

---

[2] While Plaintiff's claim was pending in District Court (No 12-CV-0170), he filed a subsequent application for Title XVI benefits, Plaintiff's application was approved with an onset date of January 31, 2012. Therefore, the period in question before ALJ Gale-Smith was April 12, 2005-January 30, 2012.

3

disorder. (*Id.*) Third, the ALJ found that Plaintiff did not have an impairment that meets or medically equals one of the listed impairments located in 20 C.F.R. Part 404, Subpart P, Appendix. 1. (T. 1079.) Fourth, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work. (T. 1080.)[3] The ALJ afforded Plaintiff additional restrictions within light work. The ALJ determined that Plaintiff:

> could only occasionally climb ramps and stairs, balance, stoop, kneel, and crouch; and could not crawl. [Plaintiff] [had] a second grade reading level, third grade spelling level, and a seventh grade arithmetic level. [Plaintiff] needed to receive all directions orally, was limited to simple routine and repetitive tasks, and needed to avoid concentrated exposure to respiratory irritants such as dust, odors, fumes, and gases. [Plaintiff] needed to work in a low stress job defined as occasional changes in the work setting, occasional decision-making, and occasional judgment required.

(T. 1080-1081.) Fifth, the ALJ determined that Plaintiff was incapable of performing his past relevant work; however, there were jobs that existed in significant numbers in the national economy Plaintiff could perform. (T. 1088-1089.) Based on vocational expert ("VE") testimony, the ALJ determined that Plaintiff could perform the occupations of cleaner and polisher (DOT 709.687-010), assembler (DOT 739.687-030), advertising material distributor (DOT 230.687-010), usher (DOT 344.677-014), and bakery worker/conveyor line (DOT 524.687-022). (T. 1089.)

## II. THE PARTIES' BRIEFINGS ON PLAINTIFF'S MOTION

### A. Plaintiff's Arguments

---

[3] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time. 20 C.F.R. §§ 404.1567, 416.967.

4

Plaintiff makes one argument. Plaintiff argues the ALJ erred in her step five determination that there were a significant number of jobs in the national economy which Plaintiff could perform. (Dkt. No. 16 at 2-6 [Pl.'s Mem. of Law].) Plaintiff also filed a reply brief in which he makes no additional arguments. (Dkt. No 24 at 1-4 [Pl.'s Reply Mem. of Law].)

### B. Defendant's Arguments

In response, Defendant makes one argument. Defendant argues the ALJ's step five determination was proper. (Dkt. No. 20 at 1-7 [Def.'s Mem. of Law].)

## III. RELEVANT LEGAL STANDARD

### A. Standard of Review

A court reviewing a denial of disability benefits may not determine de novo whether an individual is disabled. *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. *See Johnson v. Bowen*, 817 F.2d 983, 986 (2d Cir. 1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); *Grey v. Heckler*, 721 F.2d 41, 46 (2d Cir. 1983); *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and has been defined as "such relevant evidence as a reasonable mind might accept as

5

adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health & Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### B. Standard to Determine Disability

The Commissioner has established a five-step evaluation process to determine whether an individual is disabled as defined by the Social Security Act. *See* 20 C.F.R. §§ 404.1520, 416.920. The Supreme Court has recognized the validity of this sequential evaluation process. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The five-step process is as follows:

> First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity. If he is not, the [Commissioner]

6

next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations. If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity. Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work. Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform. Under the cases previously discussed, the claimant bears the burden of the proof as to the first four steps, while the [Commissioner] must prove the final one.

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

## IV.    ANALYSIS

### A.    Whether the ALJ's Step Five Determination was Proper

After carefully considering the matter, the Court answers this question in the affirmative, for the reasons stated in Defendant's memorandum of law. (Dkt. No. 20 at 1-7 [Def.'s Mem. of Law].) The Court adds the following analysis.

At step five of the sequential process the burden shifts to the Commissioner to establish that there are a significant number of jobs in the national economy that a plaintiff can perform based on his RFC, age, education, and prior vocational experience. *See* 20 C.F.R. §§ 404.1560(c)(1), 416.960(c)(1). Here, due to Plaintiff's significant non-exertional impairments, the ALJ enlisted the testimony of a VE.

At step five, the ALJ determined that there were a significant number of jobs in the national economy that Plaintiff could perform. (T. 1089.) The ALJ based her determination on VE testimony elicited prior to the hearing and during the supplemental hearing. On January 28, 2014, the VE completed a set of written interrogatories. (T.

7

1607-1611.) The interrogatories contained two hypotheticals identified as "Hypo 1" and "Hypo 2." Both hypotheticals limited Plaintiff to light work with the additional physical and mental non-exertional limitations found in the ALJ's ultimate RFC determination. The ALJ's "Hypo 1" also included limitations on Plaintiff's ability to reach with his non-dominant right upper extremity, which the ALJ ultimately did not adopt in her RFC determination. (T. 1608.)[4] The VE stated in her response to the interrogatories, that under "Hypo 1" Plaintiff could perform work as a bakery worker (DOT 524.687-022), counter clerk (DOT 249.366-010), and courier (DOT 230.663-010). (T. 1610.)[5] Under "Hypo 2," the VE stated Plaintiff could perform work as an advertising distributor (DOT 230.687-010), cleaner and polisher (DOT 709.687-010), and assembler (DOT 739.687-030). (*Id.*)

A supplemental hearing was held to obtain additional testimony from the VE. At the supplemental hearing the ALJ altered her "Hypo 1" from the written interrogatory by adding additional reaching limitations. (T. 1664-1665.) At the hearing, the VE testified that based on "Hypo 1," with the additional limitations, Plaintiff could still perform the job requirements of bakery worker, counter clerk, and courier. (T. 1667.) The ALJ then afforded Plaintiff's counsel an opportunity to question the VE.

Plaintiff's counsel focused his questioning on the reading requirements of the occupations, as defined in the DOT, and whether or not Plaintiff could perform the occupations the VE had just testified to. The DOT provides definitions of occupations in terms of exertional and non-exertional requirements. The DOT also assigns

---

[4] Plaintiff does not argue that the ALJ's RFC determination is flawed.

[5] Dictionary of Occupational Titles (4th ed., rev. 1991).

occupations general educational development ("GED") levels on a scale of 1 through 6. *See* DOT, Appendix C – Components of the Definition Trailer, 1991 WL 688702. A GED comprises of reasoning development ("R"), mathematical development ("M"), and language development ("L"). *Id.* Here, the VE testified that someone with Plaintiff's second grade reading ability would not be able to perform occupations with a language development level of 2. (T. 1671.)[6] The VE then amended her prior testimony and clarified that due to Plaintiff's limited reading ability, Plaintiff would not be able to perform the occupations of courier or counter clerk because both occupations had a DOT language level of 2. (T. 1674-1675.) The VE testified that given Plaintiff's reading limitations, he would still be able to perform the occupations of advertising distributor, and cleaner and polisher, both of which had a language level of 1. (T.1676-1677.)[7] Essentially, the VE testified that someone with a second grade reading level could not perform an occupation with a language level of 2, as defined by the DOT.

Given the VE's testimony, that Plaintiff could not perform occupations with a language level of 2, the occupations which Plaintiff could perform decreased. The VE testified the bakery occupation would still be applicable, as would the additional occupation of usher (DOT 344.677-014). (T. 1675-1676.)[8]

---

[6] Language comprises of reading, writing and speaking.

A language level of 2 therefore encompasses a reading level of 2, which is defined as:

Reading: Passive vocabulary of 5,000-6,000 words. Read at rate of 190-215 words per minute. Read adventure stories and comic books, looking up unfamiliar words in dictionary for meaning, spelling, and pronunciation. Read instructions for assembling model cars and airplanes.
APPENDIX C - COMPONENTS OF THE DEFINITION TRAILER, 1991 WL 688702.

[7] This testimony was still based on the RFC presented in "Hypo 1."

[8] Testimony still assuming "Hypo 1."

9

The occupations which the ALJ lists in his decision at step five all have a language level of 1; cleaner and polisher (DOT 709.687-010), assembler (DOT 739.687-030), advertising material distributer (DOT 230.687-010), usher (DOT 344.677-014), and bakery worker (DOT 524.687-022). (T. 1089.)

Plaintiff's counsel questioned the VE even further on the specific grade level associated with a language level of 1. The VE testified that a language level of 1 encompasses first through third grade. (T. 1676.) Plaintiff's counsel pressed on the issue of erosion of the occupational base of those occupations with a reading level of 1 if that person had only a second grade reading level. The VE testified that "it depends on how the job is structured;" however, the VE did not specifically state how the occupational base of the occupations to which she testified would be affected. (T. 1680.)

Plaintiff first argues that he would be unable to perform the occupations of assembler and usher because they "carry a language level of 2." (Dkt. No. 16 at 3 [Pl.'s Mem. of Law].)⁹ Plaintiff misread the DOT. According to the DOT, the occupation of usher requires a *reasoning* level ("R") of 2 and a language level ("L") of 1. DOT 344.677-014.¹⁰ The occupation of assembler also has a reasoning level ("R") of 2 and a

---

⁹ Plaintiff states in his reply that Defendant wrongly concluded Plaintiff argues that the usher and assembler jobs were not available because of the language level of 2. (Dkt. No. 24 at 1 [Pl.'s Reply Mem. of Law].) However, that is precisely what Plaintiff's brief states: "The [VE] properly testified that a language level of 2 required a reading level of 4-6ᵗʰ grade and consequently could not be done by this Plaintiff with a 2ⁿᵈ grade reading level. Consequently those 2 jobs are clearly eliminated as both the assembler and usher carry a language level of 2." (Dkt. No. 16 at 3 [Pl.'s Mem. of Law].)

¹⁰ Plaintiff's confusion may have arisen from the use of abreviations for GED levels on certain websites. For example, www.occupationalinfo.org, provided the following definition of usher: "[a]ssists patrons at entertainment events to find seats, search for lost articles, and locate facilities, such as restrooms and telephones. Distributes programs to patrons. Assists other workers to change advertising display. GOE: 09.05.08 STRENGTH: L GED: R2 M1 L1 SVP: 2 DLU: 81." The "R" after GED refers to reasoning, not reading. The reading level is included under "L" as a part of the language requirement. Westlaw, however, does not use letters to identify the GED levels. For example, under the

10

language level ("L") of 1. DOT 739.687-030. Therefore, the occupations of usher and assembler are not eliminated due to their language level requirements because they have a language level of 1 and the VE testified that a person with a second grade reading level could perform occupations within that language level. [11]

Plaintiff next argues the occupational base for advertising material distributor would be significantly eroded because of Plaintiff's RFC which required oral instruction in addition to Plaintiff's second grade reading limitation. (Dkt. No. 16 at 4 [Pl.'s Mem. of Law].)

First, Plaintiff's RFC limitation to oral instructions was included in the written hypotheticals presented to the VE prior to the hearing. (T. 1607-1611.) Therefore, the VE took that specific limitation into consideration when providing her testimony regarding the number of occupations available in the national economy. At the hearing, Plaintiff's counsel pressed the VE on this issue asking, "[a]dvertising material distributor, you get stuff that you have to read and you – it's not going to all be oral." (T. 1680.) To which the VE responded, "[t]hat's correct, but it also – it depends – it really does depend on the job." (*Id.*) The VE testified in her written interrogatories that the occupational base of advertising material distributor consisted of 43,016 jobs nationally. (T. 1610.)[12]

---

DOT definition of usher Westlaw provides the following: "Language: Level 1 - READING: Recognize meaning of 2,500 (two- or three-syllable) words. Read at rate of 95-120 words per minute. Compare similarities and differences between words and between series of numbers." DOT 344.677-014.

[11] Plaintiff states in his reply brief that "there is no question that the advertising material distributor also has a language level of 2." (Dkt. No. 24 at 2 [Pl.'s Reply Mem. of Law].) However, according to the DOT, the occupation of advertising material distributor has a language level of 1. DOT 230.687-010.

[12] The VE did not provide the number of jobs that were available regionally. However, an ALJ may rely only on significant number of jobs available in the national economy. *Colon v. Comm'r of Soc. Sec.*, No. 6:00-CV-556, 2004 WL 1144059, at *8 (N.D.N.Y. Mar. 22, 2004).

Neither Plaintiff's counsel, nor the ALJ, specifically asked the VE if the number of jobs she gave in her written interrogatory represented an eroded occupational base.

After questioning by Plaintiff's counsel regarding the need for oral instruction and second grade reading levels, the ALJ asked the VE if the occupation of advertising material distributer would be "inappropriate" given the hypothetical. (T. 1676-1677.) The VE testified that the occupation of advertising material distributer would still be appropriate. (*Id.*)[13]

Even assuming the number provided by the VE represented an un-eroded occupational base and the number of jobs available would be eroded or eliminated, there would still be a significant number of jobs in the national economy which Plaintiff could perform. Neither the Regulations nor the Social Security Rulings define "significant number." Courts have held that a "significant number" of jobs is "fairly minimal." *Rosa v. Colvin*, No. 12-CV-0170, 2013 WL 1292145, at *9 (N.D.N.Y. March 27, 2013) (*citing Fox v. Comm'r of Soc. Sec.*, No. 02-CV-1160, 2009 WL 367628, at *20 (N.D.N.Y. Feb. 13, 2009)). Courts have held that numbers varying from 9,000 upwards constituted "significant." *See Hoffman v. Asture*, No. 09-CV-5252, 2010 WL 1138340, at *15 (W.D.Wash. Feb. 8, 2010) (9,000 jobs in the national economy was found significant) (*citing Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997) (10,000 jobs in the national economy was found significant)).

---

[13] ALJ: Okay. Well, let's go on to the second hypothetical and can I infer that, because the advertising distributer must follow street maps, that that would be an inappropriate job, given my hypothetical?"
VE: No, I did not – that was not my answer. My answer to [counsel's] question was, I believe, under the language designation for the GED levels, language incorporated reading is defined in the DOT as a 1, a level 1, which is a grade equivalent 1 to 3."
ALJ: "So is it your opinion that the claimant would be able to perform the job of advertising distributer?"
VE: "Yes."

12

The VE testified that the occupation of cleaner and polisher consisted of 5,884 jobs in the national economy, assembler consisted of 1,167 jobs nationally, usher consisted of 4,811 jobs nationally, and bakery worker consisted of 41 jobs nationally. (T. 1610, T. 1675.) Therefore, without taking the advertising material distributer into consideration, there were a total of 11,903 jobs in the national economy Plaintiff could perform. With the advertising position, there would be a total of 54,919 jobs available nationally. As the VE testified at the hearing, the number of jobs available under the title of advertising material distributer "could" at a minimum be eroded and at a maximum not exist, due to Plaintiff's reading limitations. (T. 1678.) However, the VE did not testify, as Plaintiff claims, that "all" remaining jobs would be "significantly eroded." (Dkt. No. 16 at 5 [Pl.'s Mem. of Law].) Therefore, at a maximum there would be approximately 54,919 total jobs Plaintiff could perform in the national economy. Even assuming arguendo the occupation of advertising material distributor was completely eliminated, there would still be 11,903 jobs available Plaintiff could perform. Therefore, there were a significant number of jobs in the national economy Plaintiff could perform and remand is not recommended.

**ACCORDINGLY**, based on the findings above, it is

**RECOMMENDED**, that the Commissioner's decision be **AFFIRMED**, and the Plaintiff's complaint **DISMISSED.**

Pursuant to 28 U.S.C. § 636 (b)(1) and Local Rule 72.1(c), the parties have **FOURTEEN (14) DAYS** within which to file written objections to the foregoing report. Any objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN DAYS WILL PRECLUDE APPELLATE REVIEW**.

*Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (*citing Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989)); 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72.

Dated: November 4, 2015

_____
William B. Mitchell Carter
U.S. Magistrate Judge